Jen Lee Law, Inc.
Jen Grondahl Lee, No. 270012
Leo G. Spanos, No. 261837
Connie Tche, No. 255235
Amir Beg, No. 322363
111 Deerwood Road, Suite 200
San Ramon, California 94583
(925) 583-6738
jen@jenleelaw.com

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

In re:

HIDDEN GLEN, LLC

      Debtor,

Case No. 20-41767 CN

Chapter 11

UNITED CONSTRUCTORS INC'S OBJECTION TO MOTION FOR APPROVAL FOR USE OF CASH COLLATERAL

**OBJECTION TO MOTION FOR APPROVAL OF USE OF CASH COLLATERAL**

United Constructors Inc ("UCI"), secured creditor in the above referenced case, hereby objects to Hidden Glen, LLC's (hereafter "Debtor") motion for approval of use of cash collateral, including rents received from rental property at 3225 Clayton Road, Concord, California 94521 ("Property").

1

## FACTS

1. On November 9, 2020, the Debtor filed a voluntary petition for Chapter 11 bankruptcy.
2. The Debtor is currently operating as a debtor-in-possession.
3. The Debtor owns the Property, a completed duplex, as well as property located at 3223 Clayton Road, Concord, California 94521, an uncompleted duplex ("Uncompleted Property").[1]
4. The Property is being rented under a residential lease for $6,190.
5. The Uncompleted Property is not generating income.
6. The Property has a current market value of $1,350,000 and the Uncompleted Property has a current market value of $1,250,000.
7. The Property and Uncompleted Property are encumbered by the following liens, in order of seniority –
   a. Mechanic's lien held by UCI in the amount of $612,829.07[2]
   b. LTV Private Equity ("LTV") in the amount of $1,577.004 (deed of trust) with monthly payments of $12,375
   c. Real Estate Finance ("REF") in the amount $600,000 (deed of trust) with monthly payments of $4,624
   d. Lois Mowat ("Mowat") in the amount of $25,000 (deed of trust) with no monthly payments

---

[1] Unless otherwise stated, use of the term "properties" refers to the Property and the Uncomplete Property.

[2] The amount is UCI's current best estimate of the claim; the amount listed is without prejudice to any proof of claim filed by UCI with respect to the properties. This is also the amount listed on Debtor's schedule D.

8. In addition to the monthly payments to LTV and REF, the Debtor must pay property taxes ($940), insurance ($85.90), and property management fees ($280).

9. On or about June 9, 2020, UCI filed a complaint against the Debtor in Contra Costa County Superior Court for, among other things, breach of contract and foreclosure of mechanic's lien ($612,829.07 plus interests and costs).

10. The Debtor filed a cross-complaint for $1,065,000, as listed on schedule A/B.

## **ARGUMENT**

### **CASH COLLATERAL SHOULD BE SEGREGRATED FOR BENEFIT OF THE SENIOR LIENSHOLDER PENDING OUTCOME OF STATE COURT LITIGATION AND/OR TREATMENT IN PLAN**

11 U.S.C. § 363(c)(1) grants a debtor-in-possession the rights and powers of the Trustee with respect to property of the estate. This includes the right to use property as permitted by section 363. The debtor-in-possession, however, may not use, sell, or lease "cash collateral" unless each entity with an interest in such collateral consents or the court authorizes such use "after notice and hearing." 11 U.S.C. § 363(c)(1). UCI is the senior lienholder on both properties and has pending litigation against the Debtor for breach of contract and foreclosure on the mechanic's lien. As such, UCI has an interest in the use of the cash collateral.

The cash collateral from the rent of Property of $6,190 should be segregated for the benefit of UCI pending the outcome of the state court litigation and or treatment in the Chapter 11 plan. With the exception of the property taxes, insurance, and property management fees, none of the junior lienholders should be paid from the cash collateral. Use of the cash collateral to pay LTV and REF unduly prejudices UCI and would be inequitable under the circumstances.

**First**, the Property and Uncompleted Property have no equity. Schedule A/B lists a current market value of $2,600,000 and liens totaling $2,821.383.35. Absent further information, the Debtor's ability to sell the property or refinance to pay all lienholders remains in doubt (at least, in the foreseeable future). As a safeguard, the cash collateral should be segregated until either resolution of the state court litigation or confirmation of a Chapter 11 plan. **Second**, the Uncompleted Property is still under construction. It is unclear when it will be completed, how much will cost, when it will be rented, and how much income it will generate. Given these uncertainties, the cash collateral should not be used to pay junior lienholders to the detriment of UCI **Third**, the Debtor is significantly cash flow negative. The contractual payments – not including the obligations to UCI and Mowat -- <u>total $18,304.90</u> [LTV ($12,375), REF ($4,624), property taxes ($940), insurance ($85.90), and property management fees ($280)] yet <u>the rent is only $6,190</u>. The Uncompleted Property would need to be rented for $12,114.90 (almost double the rent for the Property) to break even. Since it is unclear when the Uncompleted Property will be finished and how much it will generate in rent, the current cash collateral should be set aside until a plan of reorganization can be achieved that equitably treats all lienholders. **Fourth**, UCI performed substantial work related to the properties and has significant unreimbursed costs and expenses. UCI spent over $1.9 million on the properties but was paid less than $700,000. In addition, UCI is facing collection activities because it is unable to pay its creditors for loans it took out for development of the properties. And, **fifth**, the Debtor can continue to operate the business without using the cash collateral to pay the junior lienholders. Neither LTV nor REF offer services related to operation of the business. The Debtor

4

Case: 20-41767    Doc# 30    Filed: 12/31/20    Entered: 12/31/20 11:42:31    Page 4 of 5

can continue to rent the Property and seek financing, subject to court approval, to complete construction of the Uncomplete Property while pursuing a plan of reorganization.

## **CONCLUSION**

Based on the foregoing, UCI respectfully opposes the Debtor's Motion for Approval of Use of Cash Collateral.

Dated: December 31, 2020             Jen Lee Law, Inc.


/s/ Leo G. Spanos
Attorney for UCI